IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In Re:

DARYL DECORA,

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

HO-CAK FEDERAL,

                                                           OPINION AND ORDER

                     Appellant,

                                                            08-cv-315-bbc

   v.

PETER F. HERRELL, Trustee,

                   Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     Debtor Daryl DeCora, a member of the Ho-Chunk Nation, borrowed money from appellant Ho-Cak Federal, granting Ho-Cak a security interest in debtor's is right to future tribal per capita payments. The bankruptcy court held that the bankruptcy trustee, asserting his status as a hypothetical lien creditor under § 544(a) of the bankruptcy code, has an interest in the payments superior to Ho-Cak's. The bankruptcy court voided Ho-Cak's security interest and ordered Ho-Cak to turn over to the trustee all post-petition payments from the nation. Ho-Cak appeals from that order.

1

The parties stipulated to the following relevant facts before the bankruptcy cout.

FACTS

As a member of the Ho-Chunk Nation, debtor is eligible to receive quarterly per capita payments of tribal gaming revenues in accordance with Title 2, § 12 of the Ho-Chunk Nation Code.  Title 2, § 8 of the Ho-Chunk Nation Code , which governs claims against per capita tribal payments, includes the following provisions:

> 4.   **Character of Per Capita Distribution / No Right to Compel.**  Per Capita Distributions shall be made, when and as determined or declared in accordance with Per Capita Distribution Ordinance and any and all other applicable laws of the Nation, out of assets and earnings of the Nation, and such assets and earnings shall retain their character as property of the Nation until Payment of Per Capita Shares is actually made therefrom.  No Tribal Member, nor any person claiming any right derived from a Tribal Member, including creditors of a Tribal Member, shall be entitled to compel the making of any Per Capita Distribution prior to the time of Payment thereof, . . .
>
> 5.   **Permitted Claims Against Per Capita Shares.**
>
>    a. The following claims shall be recognized and enforced by the Nation against a Per Capita Share at the time of Payment of the Per Capita Distribution of which it is a part and prior to the distribution of such Per Capita Share to a Tribal Member:
>
> > (1) Any debt or monetary obligation then due and owing by the Tribal Member to the Nation, . . .

2

>  (2) Any order of garnishment issued by the Trial Court for purposes of child support . . .
>
>  (3) Any federal income tax levy issued against the income or property of the Tribal Member held by the Nation; and
>
>  (4) Any debt or monetary obligation then due and owing by the Tribal Member to Hocak Federal, . . .
>
>  (5) Any debt owned to an Elder, . . .
>
> b. In the event that multiple claims described above are made against the same Per Capita Share: (i) federal tax levies described in paragraph a(3), above, shall have the first priority, except to the extent they allow prior payment of child support, (ii) child support payable under paragraph a(2), above, shall the next priority, (iii) recovery of debts and obligations to the Nation shall have the next priority, and (iv) debts owing to Hocak Federal, a division of Citizens Community Federal shall have the lowest priority, . . .
>
> 6. **No Other Claims.** Except as specifically provided in Section 5, the Nation shall not recognize or enforce any claim, garnishment, levy, attachment, assignment or other right or interest in a Per Capita Share. . . .

In 2005, Ho-Cak made two loans to debtor in the amounts of $6,131 and $19,121, and debtor granted Ho-Cak a security interest in his future per capita payments to secure repayment of the loans. Ho-Cak did not file anything reflecting the security agreements with the Wisconsin Department of Financial Institutions, but it did send notice of its interest to the Ho-Chunk Nation.

3

Debtor filed a chapter 7 bankruptcy petition on July 27, 2006.

On January 8, 2007, the trustee sent a letter to the Nation asking that it make debtor's future per capita payments directly to the trustee. On February 8, 2007, the Ho-Chunk attorney general sent a letter to the trustee refusing to make any payments other than in strict accordance with Title 2, § 8, ¶ 5 of the Ho-Chunk Nation Code.

On July 27, 2007, the trustee filed an adversary proceeding to avoid Ho-Cak's security interest in the per capita payments and to recover any post-petition payments by the Nation to Ho-Cak in satisfaction of the debtor's obligations. The bankruptcy court ruled in the trustee's favor on summary judgment and this appeal followed.

## OPINION

The single dispositve legal issue is whether the trustee can exercise his powers under § 544(a) of the bankruptcy code to defeat Ho-Cak's security interest in per capita payments from the Nation to debtor. Because I conclude that he cannot, I will reverse the decision of the bankruptcy court.

Section 544(a)(1) vests the trustee with the "rights and powers of . . . a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien." If at the time debtor filed his petition, such a lien creditor would have had rights in the per capita payments superior to

4

Ho-Cak is under applicable non-bankruptcy law, then the payments become property of the estate, free of Ho-Cak's interest. In re Airadigm Communications, Inc., 519 F.3d 640, 650 (7th Cir. 2008). In assessing the rights of the hypothetical lien creditor, "applicable non-bankruptcy law" potentially includes not only state commercial codes, but also federal law, id., and in this case, tribal law. The ultimate issue is whether a judgment lien creditor outside bankruptcy could elbow its way ahead of Ho-Cak in a fight for the per capita payments. I conclude that it could not because tribal law subordinates the lien creditor's claim to Ho-Cak's and federal preemption and tribal sovereignty prevent state law from altering this result.

     The Ho-Chunk Nation creates and controls the per capita payments, and does not legally recognize a judgment lien against per capita rights, 2 HCC § 8, ¶ 6, unless the lien reflects a specific type of debt identified in ¶ 5. The effect of its code is illustrated by the Nation's letter of February 8, 2007, refusing to recognize the trustee's assertion of rights to the payments. The Nation would continue to recognize and pay Ho-Cak's claim pursuant to 2 HCC § 8, ¶ 5(a)4, but would disregard the judgment lien creditor's plea for payment. Furthermore, because 2 HCC § 8, ¶ 4 expressly provides that declared payments remain property of the Nation and no interest passes to the tribal member until actual payment is made, the hypothetical creditor's lien would attach only to payments actually made to the tribal member after satisfaction of Ho-Cak's claim.

The Ho-Chunk Nation's sovereignty and the federal interest in tribal self-governance would preempt any attempt by the lien creditor to rely on Wisconsin courts and state law to impose a different result. White Mountain Apache Tribe v. Bracker, 448 U.S. 136, 145 (1980). The tribal interest in regulating distribution of tribal assets to tribal members is a type of internal regulation within tribal sovereignty upon which state law is usually not permitted to intrude. New Mexico v. Mescalero Appache Tribe, 462 U.S. 324, 333 (1982) (upholding supremacy of tribal hunting law over conflicting state law). HCC § 5 also implicates rights of non-Indian creditors, so assessing whether state law can alter tribal law requires balancing of the federal and tribal interests in tribal sovereignty and self-governance with state interest in enforcing its laws. White Mountain Apache Tribe, 448 U.S. at 145 (1980). However, the Nation's interest in controlling the distribution of its revenue far outweighs Wisconsin's interest in enforcing its commercial code. The right of the Nation to distribute its own assets as it sees fit is central to self-governance; Wisconsin's interest in uniform treatment of creditors is minimal by comparison.

Analyzing the issue in the context of competing creditor rights to timber, the Court of Appeals for the Ninth Circuit awarded timber proceeds to a tribe pursuant to federal regulations, notwithstanding the fact that the tribe would have lost under a Uniform Commercial Code analysis:

6

> In contrast, state interests are rather meager here. While the state presumably has an interest in seeing its law applied uniformly and in protecting good faith purchasers, that interest is diminished with respect to those dealing with Indian entities or in Indian country. It is too late in the day for someone in the bank's position to clam surprise that federal law, not state law, governs a transaction involving timber harvested on Indian land.

In re Blue Lake Forest6 Priducts, Inc., 30 F.3d 1138, 1142 (1994). Although this case involved tribal law rather than federal regulation, the reasoning applies with equal force. Any creditor taking a security interest or lien tribal per capita payments should reasonable anticipate that its rights may be affected by tribal law. The existence of different priority rules in this limited context does not impinge substantially on the state's interest in uniformity.

The result I reach is consistent with Airadigm, which rejected the state law perfection argument adopted by the bankruptcy court because conflicting federal law dictated a different outcome:

> But neither the UCC nor Wisconsin law decides the issue, as the federal statutory and regulatory law prevent a hypothetical lien creditor from obtaining a superior interest in an FCC license for purpose of the bankruptcy code. . . . [T]he license [] is a creature of federal law. Accordingly, federal law also defines the FCC's retained interest in that license. And as defined by federal law, the FCC does not have to perfect its interest in a spectrum license because federal law prevents another creditor from holding a superior interest.

7

519 F.3d at 650-51. As originator of the per capita payment right, the Nation expressly retained the right to bar attachment of any liens prior to final payment and to redirect a portion of the payment as provided in 4 UCC § 8, thereby precluding non-listed creditors, including the bankruptcy trustee, from acquiring a superior right.

Because I find that a hypothetical lien creditor could not obtain an interest in debtor's per capita payment superior to that of Ho-Cak, I find that the bankruptcy court erred in avoiding Ho-Cak's security interest in the payments.

ORDER

IT IS ORDERED that the decision of the bankruptcy court declaring Ho-Cak's security interest avoided and directing Ho-Cak to turn over post-petition payments to the trustee is REVERSED.

Entered this 27th day of October, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

8